May it please the court, Per Olson representing the appellant Timothy Smith. I would like to reserve two minutes for rebuttal if I may. As we stand now on this appeal, there are essentially two issues, two overarching issues that the court is faced with. One pertaining to, both pertaining to ineffective assistance of counsel. The first issue pertains to whether trial counsel was inadequate in how he presented the suppression motion. The second issue deals with whether counsel was inadequate for how he dealt with the sentencing issues that came up in connection with Mr. Smith's characterization as an armed career criminal. And I'd like to, if I may, just briefly touch on the suppression issue to start off with. Obviously, I don't think this court can possibly rule that the trial counsel provided ineffective assistance counsel based on the record we have now. I think what has to happen is we have to have an evidentiary hearing. And if that's the one point that I would emphasize, that would be it with regard to the suppression. And what would take place at this evidentiary hearing? What do you envision? Mr. Smith would testify. And he would testify essentially consistent with what he has declared in his two declarations to the court in terms of the chain of events that happened at the stop. And I imagine the government may wish to call the two officers that were present. He can raise all of this on habeas, can't he, if he wants to? And that's where we stand now. And the problem is, is that Judge Aiken ruled just- I thought this was a direct appeal. It's not. No, Your Honor, there was a direct appeal that was handled by the same trial lawyer. He didn't raise suppression issues on appeal. But what we're saying is that really in the underlying case, at that suppression hearing, he should have listened to his client. And his client was saying, look, what those officers are saying on the stand, what Detective Kansky is saying on the stand specifically, is not how it happened. Let me- this is my concern. And I know you make this argument about whether there was consent or no consent. But the district court made the alternative ruling that there was probable cause. And so regardless of the evidentiary hearing and how that might color a court's determination as to whether there was consent, how would that affect the outcome of the suppression hearing, given the probable cause ruling? Well, Your Honor, what would have happened, what should have happened, is had that issue been presented. And depending on how Judge Aiken ruled on the issue of consent and however she made those factual findings, having heard both sides of that dispute, if she had ruled against us, against the defendant on that, then there would have been, we believe, that issue to appeal as well as the probable cause issue. So let's assume that your argument, and it didn't seem like you were making this argument, but you could construe your argument as saying, well, counsel was also deficient in not appealing the probable cause ruling. Yes. Why was the probable cause ruling wrong? What would you say on appeal? How would it make a difference? The basis for a probable cause, Your Honor, was that there had been some reports of a person casing neighborhoods, potentially looking for houses to burgle. And they gave a physical description, and they described the car. Well, yes. The physical description of the person was not very precise, and the description in the ATL, the attempt to locate bulletin that went out to the police, it described a pickup which matched my client's pickup, but it described a Hispanic male. Well, they had two descriptions, right? They had one that did match your client and one that didn't, maybe an accomplice or whatever, but at least one of the descriptions did match your client, correct? Well, sort of. I mean, there was a description of a Hispanic male driving a blue pickup, which is problematic because my client is not Hispanic, but he's the one that's driving a pickup. But it was a blue pickup. I'm sorry? It was a blue pickup. It was, indeed, a blue pickup. And this is Bend, Oregon, which is not the smallest town in the world. But the descriptions were of a Hispanic male driving a blue pickup or possibly a white male. Now, the ATL didn't give a description of a vehicle that the white male was driving, but there was some other evidence or some other citizen reports that said that that person was driving a beat-up older vehicle. And so you have citizen reports of somebody casing the neighborhood, possibly driving a blue pickup truck. And then you have the stop itself and the things that were observed, you know, prior to the point that we believe was the non-consensual search, which consisted of the duffel bag and the Sawzall case. Well, didn't he give consent for the search of the Sawzall and the duffel? Oh, and your concern is the general search of the truck. Correct, Your Honor. Yes, we don't dispute that he – our position is that, you know, at the outset of the search, one of the officers asked for consent to search those two items. And Mr. Smith agreed to do that. And they took it out, according to Mr. Smith, and put it on the bed of the truck and searched them there. And then Detective Kansky proceeded to search the rest of the truck. Now, at that point, we claim there was no probable cause to do so because there was not sufficient evidence known to the officers at that point in time that this gentleman was, in fact, involved in these burglary activities. So that is an alternative ruling that's out there. And I don't know that there's much that an evidentiary hearing would contribute to that other than probably a small point that Mr. Smith does say that he had tinted windows, they probably could not have seen this baseball bat that was inside, which, in fact, was not a baseball bat but a tire checker of some sort. And so – but there is that issue, Your Honor, that that was an alternative ground. And I just simply maintain that there was not probable cause for that search. So there needs to be an evidentiary hearing to resolve this dispute between these officers about – between the officer and Mr. Smith about what happened. Now, if I may, just turning to the other issue, I think the main point that perhaps I didn't get across in my brief that I would like to in my remaining time is on this issue of sentencing, there's an issue of whether the court could have considered these documents that we say she should have. An overarching issue here, really, because this is a habeas case where we're claiming attorney was ineffective, what is his duty? I mean, what is the duty that was really breached here? And I'll say as a general matter, I don't think it's disputed that a lawyer has a duty to present mitigating evidence at sentencing, whatever mitigating evidence that might be. It has to make a difference for purposes of ineffective assistance of counsel. Absolutely. What was this evidence that you think the lawyer should have presented? Well, the evidence that we've included in our excerpt of record include basically evidence showing that Mr. Smith owned that house that he burgled. Is there any case that says in a modified categorical determination that sort of evidence could be considered by a court? It seems like all of our cases go the other way. Correct. But all the cases deal with a situation where it's the government trying to introduce this evidence, Your Honor. Why does that make a difference? Well, it makes a difference because the defendant has a due process right to introduce evidence in mitigation. And the difference is, in this case, as I've tried to lay it out in the brief, and perhaps I don't think I'm drawing too fine of a line here, but this evidence that we're now coming forward with would have drawn out an ambiguity in this plea discussion that really was the basis for the court's finding that this was an unlawful entry. My concern is when the Supreme Court in Taylor is so clear, we don't want mini-trials, all you can look at are these specific documents, how it could fall below the attorney's standard of care that he didn't introduce documents that the Supreme Court said don't look at? Well, there was no case, let me put it this way, there was no case that said a lawyer couldn't do that. There were cases that said the government can't do that. And certainly there are cases that speak against the idea of having a mini-trial. And I don't think I'm talking about a mini-trial. I'm talking about convincing this judge, Judge Aiken, that there's some real question here about whether his entry into that home was unlawful, as understood under the generic definition of burglary. And these documents from the dissolution proceeding, which admittedly don't necessarily prove anything by clear and convincing evidence, other than he had a connection to that house. That was their home. He owned it. That was their marital home, contemporaneous with when this burglary occurred. And so knowing that, or seeing those documents, and seeing the probation report where it says he resides at this location, I maintain would have shown that his lawyer's statement to the court at the plea hearing, where she's saying this is his former home, the interpretation of that is it was his former home at the time of the plea hearing, as opposed to at the time of the burglary. So I've gone over my time. Thank you. Thank you. Good morning. I'm Frank Papagni. I'm the prosecutor who's handled this case, responsible for it from its beginning. The arguments the defense counsel makes today, I've tried to defend the defense lawyer, Mr. Weinerman, because there were strategic decisions he had to make at the suppression hearing, at the sentencing hearing, and on appeal. The argument that he didn't present the mitigating facts regarding, perhaps in Sacramento burglary, it was his own home, Judge Aiken, actually in her written order, except for record page 7, says the documents that you folks are looking at, she said, regardless, he might have considered such evidence to reveal nothing more than the fact that the defendant once lived at the residence he unlawfully entered. Information that the defense counsel presented at his sentencing before this court. So she did have that information, that there was a contention the defendant actually resided at the residence he burglarized in Sacramento. The problem the defense counsel had, and the court probably recognized, is that in Shepard, which was not yet decided when this case went before Judge Wallace and the panel, back in 2000, I think it was 4, Shepard makes it clear at page 23, 544 U.S. at 23, the avoidance of collateral trials requires that evidence of generic conviction be confined to the records of the convicting court, approaching the certainty of the record of conviction. Records of the convicting court, I don't think, include domestic court, but perhaps could. And there is the due process argument, and I have not found any cases that said defense counsel are allowed to bring in extraneous evidence, if you will, as has been attempted on this habeas. And Judge Aiken found the same thing, and she put it in her order. But if there is a due process argument, let's just contemplate for a second what that would mean in this particular case. Now, the government has not countered these domestic documents that were put in or the probation officer's report. The defendant was on escape status. He escaped from the jail for his theft conviction, in paragraphs 27 through 30 of the pre-sentence report. So when he entered the home in December, he had actually escaped from the 120 days he was supposed to be serving. And on top of that, then, what do I do with the wife? Do I bring her up here and have her testify that she obtained a restraining order? I don't know that she has, and I'm not claiming that. But you can already see how far down the road I'd have to go to impeach him. And I'd also probably, as I would have done at the suppression hearing, should he have testified that he had not given actual consent. And that, I suspect, was one of the reasons that Mr. Wynum did not put his client on the stand, is that a prosecutor like myself would probably ask about his four prior forgery convictions, about his theft convictions. And as you folks now have in the record that I provided you, the interview that was recorded between Detective Kansky and the defendant, which is quite lengthy, in which the defendant, if you read it, comes across less than credible in his explanation of where he got the firearm, one he contended he bought almost two years before he was arrested, and one which was stolen in a burglary less than two months before he was stopped. I would probably have also pointed out that the lady whose home he attempted to burglarize, he said he was looking for an individual named Stephen Reynolds, or excuse me, Stephen Richards, which the reports clearly show in my supplementary excerpt of record, never worked for the gas company. So the defense counsel, Mr. Wynum, in this case, was pretty smart, because if he had put the defendant on the stand in the suppression hearing, obviously the defendant would have faced that type of cross-examination. And even today, when we look at his declaration, it would be perfectly appropriate if I wanted to impeach the declaration to offer such convictions. If we had an evidentiary hearing, and the government's position is Judge Aiken did not abuse her discretion by declining the evidentiary hearing, there's no reason to put the officers back on the stand. Their testimony, which you have, is pretty clear. There's no reason to put anyone else on the stand, except for the defendant to take the stand and reiterate his declaration, which Judge Aiken reviewed in the context of the hearing that she held, the evidentiary hearing of the suppression issue. But he could put the lawyer on the stand. Well, that was the only thing that actually could justify an evidentiary hearing here. Why did he choose the path that he did? Well, that's true. And I would suspect to you that Mr. Weinman, if you put him on the stand, if he acknowledged waiver of privilege, if he acknowledged the defendant had told him that twice, he'd perhaps have offered the explanation along the lines that I've suggested today. Do I know that? No. But if you look at the record, a competent lawyer who put in all the other grounds for suppression like Mr. Weinman did, Mr. Weinman, this is not a case where the defense lawyer overlooked the suppression issue altogether. You look at his motion. You look at his arguments. He took on the government and said, justify your stop. Stop was too long. You exceeded the scope of his consent. Mr. Weinman went down the checklist, and he had to make a choice. Judge Aiken pointed out that if he'd making the choice that the defendant had not given this actual consent to search the interior of the vehicle, that made little sense because it was inconsistent with the fact that he did give consent, which he still admits today, for the Sawzall and for the duffel bag that were apparently on top of the blanket that contained the stolen .45 pistol. And what about the court's alternative probable cause ruling? The opposing counsel suggests that there's some flaws that might have been challenged on appeal. Well, in that regard, in my, excuse me, in the excerpt of the record, what was not discussed is that the reason why we had probable cause is that it was an off-duty police officer sitting in his home that saw this Dodge pickup, Royal Blue Dodge Dakota pickup. Now, it's just a blue pickup, but you look at the attempt to locate, which is in my excerpt of record, and Lieutenant Baxter put out an attempt to locate. In that regard, the officers were supposed to be on the lookout because of not one, not two, but a series of recent burglaries for a Royal Blue Dodge Dakota pickup. And what does the officer who was sitting in his living room see? That pickup going through his neighborhood. And then, of course, when he gets in his car to follow this pickup as he's trying to locate and get his colleagues, on-duty officers, to stop this pickup, this pickup goes into two other neighborhoods nearby. So in addition to the arguments that I've already made that are in my response to the motion suppressed, there was additional factors that justified and gave reasonable suspicion for the stop and, indeed, probable cause for the search of the vehicle, even if there had been no consent. Interestingly enough, the probable cause the officers had then would still exist today after the recent Supreme Court decision, because the purpose of the stop was not a traffic stop. The purpose of the stop was what? Trying to determine if this man was a burglary. And if you have probable cause to think he's a burglar, then you can look at him, and circumstances give you a right to look through the vehicle for contraband or evidence of that particular burglar or that charge. So I think the probable cause argument we'd submit to you is a strong one. I think it's a strategic decision that Mr. Weinerman made, both for not putting his client on the stand and making the arguments he did in the suppression motion. As far as the sentencing issue is concerned, in my excerpt of record, on page 401, is perhaps the best explanation that justifies a finding by this court that the defense attorney was not ineffective at sentencing or on appeal. In his letter, November 13, 2003, letter to the court, page 8, which is in my excerpt, page 401, Judge Acuda, I can read it to you. It says, and defense argument is this, Instead, this court must rely on the factual basis provided by the prosecutor, that's in Sacramento, and supplemented by the defense attorney or defense counsel in determining whether Mr. Smith, by plea, admitted to all the elements of generic burglary. Defense attorney further writes, The factual basis in the plea transcript does not clearly or unequivocally establish that Mr. Smith's entry into or remaining in his former home was unlawful or unprivileged. While the prosecutor said that Mr. Smith's entry into the home was unlawful, it is clear from the remarks made by Mr. Smith's counsel that Mr. Smith's entry into the home was not unlawful or unprivileged. So he's made that argument. What's interesting, and proves the government's point that this was a strategic decision not to pursue that line of argument, is that he says next, The combined force of the prosecutor and defense counsel's remarks do not clearly or unequivocally establish an unlawful entry. And then this is the key. I'd call it the smoking gun. But that is not Mr. Smith's best argument. And then Mr. Wyman goes on to say, The best argument is to show that when he entered the home, he had no intent to commit the crime. So he thought about it. He thought about what he's being attacked for today, which is whether or not he should have pursued that all the way up through sentencing and appeal and to the Supreme Court. And he made a conscious decision not to do that because he thought the best argument was the intent argument, which is proven by the fact that that was what he argued to Judge Wallace in the panel. But unfortunately for him, Judge Wallace in the panel said what? They said at page 664 and 665 of 390 Fed 3rd, that from this record we conclude these statements unequivocally establish Smith was convicted of unlawfully entering a building. And what Judge Wallace is referring to is the record of the Sacramento Court, and specifically what Judge Wallace says. I'm down to my last 10 seconds. He determined this record clearly established the elements of generic burglary. The district court reasoned that the factual basis for the charge as set forth by the prosecutor at the change of plea hearing expressly stated Smith unlawfully entered an inhabited dwelling. Those are my arguments. My time is up. Thank you. Thank you. One minute for everybody. Really briefly, the issue about his intent when he went into the house was not Mr. Smith's best argument. And the reason for that is that the California statute that defines burglary specifically requires that when you go into the house or the dwelling or the building or whatever, you have that intent to commit a crime. So that was a slam dunk issue. And that was not a good issue. And, unfortunately, on appeal, that was one of his primary issues on appeal. He abandoned by that time the whole idea of whether the entry was unlawful. Lastly, this idea that we're going to be opening up the floodgates to all sorts of mini-trials, that is not the case. This is a very unusual case. It's unusual because the defendant is the one that's trying to produce some evidence, again, to draw out the ambiguity that existed, we believe existed in that plea colloquy. Thank you. We appreciate counsel's arguments. The matter is submitted at this time.
judges: Fletcher B. , Paez, Ikuta